May be seated. Good morning, ladies and gentlemen. Judge Smith and I are very pleased to be joined by Elaine Bucklow from the Northern District of Illinois. Thank you, Judge, for taking time out of your busy schedule to help us out on the Ninth Circuit. With that, we will proceed with the first case on the oral argument calendar, which is Amezcua. You can correct me if I'm mispronouncing it versus Boon. Amezcua, Your Honor. That's correct. Amezcua. Thank you. Good morning. May it please the Court, my name is Adam Ganz. I represent Mr. Amezcua and Mr. Vasquez, the plaintiffs in the underlying matter. I would like to reserve two minutes for my rebuttal, if I could, please. Thank you. This appeal was filed after these gentlemen were denied a fair trial pursuant to the Seventh Amendment. My clients were rear-ended on the freeway by a semi-truck where the driver falsified logs, where he was over his allowable time limit to drive, and where he lied to police officers about who was driving. And the jury found that this truck driver, who rear-ended someone on the freeway, was zero percent at fault. You have to ask yourself why and what happened in the trial and what happened in the litigation in order to get to that stage under those sets of facts. And we believe that it occurred because of three specific areas. First of all, during the pretrial phase, during motion practice where there were some disclosure issues by the magistrate, I don't know that that necessarily warrants a new trial in this case on those particular issues, but certainly if this matter were to proceed back to trial, we certainly need more clarification on those issues for the magistrate to follow, because currently they are misapplying the rules of civil procedure on 26 with regards to disclosures, and there's also some inconsistencies in there as well. Also, there were some summary judgment motions that were granted as to two defendants and the issue of negligent entrustment that we believe do warrant a new trial. And there was also a various motions in Lemanay, and most importantly, in my opinion, the motions in Lemanay were denied. Kennedy. Excuse me, counsel. Did you appeal negligent entrustment? I thought that was waived. I didn't think you appealed it. No, Your Honor. That is specifically appealed. Negligent entrustment, there was a motion for summary judgment that was filed on negligent entrustment. It was preserved throughout the matter. Those defendants were dismissed, and the matter went to trial without those defendants. The negligent entrustment claim was certainly preserved. Was there something in the record that you thought that it was waived? I read the record differently than you did. But wherein did you in the record, can you point, where either of the people that you're suing under that standard had any knowledge whatsoever of any improper actions by either the husband or wife driver in this case that would have found them culpable under that theory? The question is not whether they actually knew. It's whether or not they should have known. And the facts are very – Wherein the record do you show that they should have known? There was evidence proffered by Mr. and Mrs. Boone that they habitually falsified travel logs. They did it for years. When these new standards came up – I'm talking about what the companies knew, not what they did, what the companies knew or should have put them on notice. That's what the law requires. It doesn't not. Well, the law requires that they should have known. And the question is what did they do in order to be able to come to that determination? They did nothing. All we had to do was ask. We got it in this case. We got the information out once we asked the question about have you ever falsified logs in the past before. Right. But I think Judge Smith's question is what evidence is in the record about what the company knew, not the individual, not the drivers. It's hard to prove a negative, Your Honor. So there's nothing? There's nothing because they didn't do anything. They didn't do anything in order to be able to determine this. And the reason why is because they felt like because these people hadn't been involved in this type of situation before, hadn't been, quote, unquote, caught before, that they didn't have any notice of it. Well, you don't have to get caught in order to do that. There's specific case law in there, I believe it's the Mills v. Continental packing case, which says it doesn't matter whether or not they knew of the risk or not or whether it previously resulted in an accident before. And the reason for that is because they should have done something more than just nothing. All they have to do every once in a while is say, hey, look, let's look at your logs. Let's see what you're doing. They never did any of that stuff. If they would have, they would have determined that these people were falsifying for years. And that is a question of fact for the jury to determine whether or not they should have known. That's not an issue of law. Actually, if they looked at the logs, the logs would have been perfectly okay. But, anyway, you don't get any place on that unless you can. I'm sorry? Unless you can show that there is a tribal issue on negligence that should have gone to the jury. I'm sorry. I didn't understand your question, ma'am. It seems to me that if they looked at the logs, they would have found exactly what were in the logs, right? Well, all they had to do was ask these people, are your logs accurate? Maybe do an inquiry about the amount of time that they're driving and see if there's any inadequacies on it. For years they did nothing about it. There hadn't been any accidents. There hadn't been anything else that would have, nothing that should have put them on notice. Well, other than the fact that they've been falsifying for years and admitted that they've been falsifying for years, and that's why we believe that we're entitled to that. You think they would have admitted that to them? I mean, I look at the Mills case. I mean, you run your case however you want, but at least for me, you're not going to get any traction on this one. You may as well go on to something else. Fair enough. Let's move on to the negligence. What about negligence per se? Let's move on to the negligence per se. Thank you very much. Specifically, again, that they violated the Federal Motor Carrier Safety Administration regulations. They've admitted to that. And under the Wood v. Safeway case, we believe that in order to preclude that, there has to be no finding of a fact that a jury could possibly find as a matter of law. Could you tell us where in the record we could find, because I didn't see it, what the judge said in denying your negligence per se instruction? Or even, I mean, I guess you must have denied it because it didn't go to the jury, but we can't find anything in the record that talks about it. So there's two instances. First is when we did a motion in limine on the particular issue. The motions in limine were denied, and there was a minute order on that. That's all we have on that. It said denied. It said denied. Didn't you have a final pretrial conference or something? We had a submission of the jury instructions. We then submitted probably four or five different jury instructions on this particular issue. We submitted those to the judge with argument in those, and those are part of the record, and I can certainly find those for you if I had just a second. But we do have the specific jury instructions that were asked, and below the instructions we have argument on there as well. Ultimately the judge held that he didn't believe that there was any question of fact for the jury to decide on that issue, and therefore didn't give it. All we know, and this is all you know, is that he said that Boone testified he'd had enough sleep. Well, we have better than that because we have his order on our motion for a new trial on that particular issue. And in that he specifically says he didn't think that the guy was tired because he testified he wasn't tired, and therefore he didn't give the instruction. That's not the standard. That should have been a question of fact for the jury in that particular issue. So we do have the order. Did you plead negligence per se? We did not plead negligence per se originally. We did a motion to amend the complaint to include that. It was not allowed. However, the evidence was allowed to be. No, I understand. But so it wasn't part of the pleadings in the case. We did file a 15 motion. And you're not appealing the denial of your request to amend? Correct. Correct. We do believe that it was perfectly on notice of the defense. They knew about it. We talked about it at the time of trial. We submitted the jury instructions at that particular time, and there were enough notice of the defense on that particular issue that it was tried during the case. Right. But under Nevada law, don't you have to plead negligence per se? I don't know that that's as clear as you think, Your Honor, on that issue. I believe that you can always do a motion to amend your pleadings, even after trial, by the way, in Nevada, on a 15A motion to amend to conform to the evidence that was presented at trial. You can always do that. Your Honor, we submitted the request for the negligence per se, and it was never granted. We never did the formalistic. At that point in time, he wasn't letting us have the 15A. I'm sorry, he wasn't having us do the negligence per se. It wasn't because we didn't have it in our pleadings. That was not his reasoning. No, I understand. I'm just trying to get the state of the record. I understand. And following up on that point, where in the record, the exact site are you referring to, that the district judge prevented you from presenting evidence concerning negligence per se? Well, what we have, and I don't have the exact – I might be able to find that, Your Honor, in between my rebuttal. But I can tell you that there is nothing – I'm sorry? With your rebuttal, maybe you can get it. Yeah. There is nothing in the record where he issued a formal order saying negligence per se is not. All I have is the motion for new trial that was denied, and in there he gives his reasoning why at the time of trial he didn't do it. If you're asking for where in the record during the trial that that was done, it doesn't exist. I mean, there might be some discussion that's embedded in the – So if he – you're saying he denied your right to put on evidence regarding negligence per se. You can't show in the record where he denied you the opportunity to put on evidence. Doesn't that put you in an awkward spot on that? No, Your Honor. To be honest, in the world of trying a case, you submit your – you do your motion to eliminate, try to get this evidence in, it was denied. There's no order on that that was issued. We go ahead with trial. We still proffer this evidence. We bring these arguments in front of the judge. We submit specific briefs on the particular issue to the judge. He then does not give it to us. At that point in time, our only option is to go to get a verdict and go ahead and ask for a new trial on the issue, which we well briefed the issue on in the motion for new trial, the amended motion for new trial. And he gave an order specifically outlining the reasons why, and his reasons why were that he determined that this person was not tired and therefore there was no causation of those standards to negligence. And that, Your Honor, should have been left up to the jury to decide. Was there actually any additional evidence that you needed to put in? Isn't it just a question that you weren't allowed to argue it? He did not – well, we couldn't argue it because the standards don't get put in until you actually give them as a jury instruction. Right. So we couldn't actually argue it as our theory was gone on that issue. But it isn't a question of evidence. I mean, there is an additional – you were allowed to ask him were you tired and to question his credibility, I suppose. Absolutely. And it was a question of fact of whether or not the jury determined whether or not he was tired or not. I believe my time is up. It is, but we'll give you a couple minutes for rebuttal. Thank you, Your Honors. Sotomayor, you're up. Why shouldn't the negligence per se have gone to the jury? Your Honors, the negligence per se issue in particular, there was a legal causation aspect that was missing. As Your Honors well know, that negligence per se has those four elements. There must be the statute designed to protect, the injury – or the plaintiff is the individual that that statute is designed to protect, there's injury alleged, and that injury is a legal causation. And there's a legal causation based on the violation of the statute. Now, what opposing counsel fails to establish here based on the record is that there is nothing in the record which is in support of negligence per se. I mean, let me rephrase that. The record actually supports the opposite. There was no factual support for this legal causation. Therefore, it never should have went to the jury, Your Honors. Let me ask you this, counsel. Doesn't Section 395.3 include the appellates and their injuries within the protected class? In other words, what the regulation was designed to protect? There is that argument, but you still have to go down to the next element. I believe where it fails is that legal causation aspect. Here, there was no evidence of fatigue. Well, because he said so. On the other hand, the accident happened. It was uncontroverted. As Your Honor pointed out, they could have asked questions regarding the amount of hours of sleep. Mr. Bick, who was trial counsel in this proceeding, was the one to actually elicit that he had eight and a half hours of sleep. Now, the statutory violation is akin to a seatbelt violation. Just because you write something down in a logbook doesn't mean that there's legal causation for injury alleged. And I think that's the crux of the argument here, which I believe is the whole point of the trial court. What should he have done that he didn't do? I mean, there was a violation of this statute or the regulation. And at least as it's placed in the record, that says that is negligence per se. So then the issue is causation. What should he have done? Your Honor, here, when you say he, are you referring to the driver, Boone? Yes. I guess that would be it. Yes. What should he have? No. What should counsel have done to show the connection between the violation and enough evidence to go to the jury on this issue, on whether there was causation? He should have cross-examined that witness more thoroughly, in my opinion. I can speculate as to their theory is lacking in general over negligence per se. There wasn't negligence per se instruction that was different, and I note that. It was more about lane of travel and about hazards in front of you and whether you're exercising ordinary care. So there wasn't a lack of negligence per se entirely. It's just the negligence per se that they wanted these DOT regulations in as a statutory violation, which I don't believe, and the Court agreed with me, or not me personally, of course. The Court agreed that legal causation was lacking, and I believe that that is the. Because it was unrebutted? How would he have rebutted it other than to question the fact that, well, we know that he at least didn't comply with the regulation. Indeed, he tried to cover it up, the fact that he didn't, and because he was the driver and he tried for whatever reason to show that he wasn't, he said, at least in the little bit that I have, that maybe it was in their depositions that he probably or maybe had enough sleep. But why, you know, then we have the accident. So ordinarily, wouldn't that be up to the jury to decide? No, Your Honor, because it goes to that legal causation, and that's the aspect that was missing. Here, if the evidence is not there to support the jury instruction, then it's not abuse of discretion for the Court to deny that. And I think that's the crux of the argument. If there is no legal causation, there's no nexus to this violation to the accident, then it's so attenuated. The logbook violation is akin to a seat belt violation, in our opinion. But the number of hours away from driving is more than that. I mean, there were two regulations. Correct. But both of them were denied because the Court found that there was no legal causation, and I believe that's the underlying pinpoint there. So because there's no evidence of fatigue on the record, then the conclusion is that the negligence per se instructions do not come in, Your Honors. And I believe that there is no error, and it's not reversible error in particular. If, Your Honors, I would like to go through some things that Mr. Gans said on his opening there. They're denied a fair trial. Here, the ‑‑ excuse me for a moment here.  Appellant counsel would like you to believe that this was a case full of rampant trial court errors. That's not the case here. It's an automobile negligence case where the trial court, over six days of trial, came back, the verdict came back unanimous, six person, no liability for my client, Mr. Boone. Now, that's six days of witnesses, six days of exhibits, six days of argument. Now, there were some disclosure issues, obviously. Now, if trial counsel fails to follow the rules, it's not improper to exclude those items. And as Your Honors pointed out, there's nothing in the record which supports this negligent entrustment. And counsel referenced Mills, which actually states that inquiry notice is not even enough to support the negligent entrustment issue here. So, therefore, it shouldn't have went to the jury. The companies had no knowledge, and they had no ‑‑ they should ‑‑ the test is had knowledge or should have known, right? So there's nothing here, as Your Honor pointed out, that the companies wouldn't have known just looking at these logbooks. And further, if they would have inquired, they wouldn't have known either. Now, going on to the next issue, which the only person here that applied ‑‑ misapplied rules was trial counsel for plaintiffs, in our opinion. And the misapplication of those rules led to those sanctions of exclusion. Now, they kind of want this second stab at the case. However, that's improper under the standards of review, which Your Honors are well familiar with. Abuse of discretion is not warranted here for a reversal because of the failures of counsel, the failures of strategy, and in particular, and it wasn't noted by counsel, but this medical bills withdrawal. And Your Honors didn't ‑‑ excuse me, Your Honors didn't ask about that to Mr. Ganz. However, this was a purposeful withdrawal of $700,000 in medical bills. They pursued pain and suffering instead. Now, that was a purposeful ‑‑ Let me ask you something else. Let's assume that we agreed with you on absolutely everything except for the negligence per se. What would a new trial look like? First of all, Your Honor, a new trial would look like, it would look like additional attorney's fees, for one, which is prejudice to my client. There was a unanimous verdict for zero liability. I don't believe a new trial is appropriate here. And counsel stated even that on the pretrial motions, he doesn't believe that there was any issue there that could have been reversed, focusing more on these negligence per se and the summary judgment. But this new trial, it would, first of all, be expensive. Second of all, it would be a rehash of all the evidence that it's already in. And there's substantial evidence to support this unanimous jury verdict. Simply because there is a possibility of a different verdict, that's not the standard for reversing and providing a new trial here. The standard of review is the crux of the case, Your Honor. They can't now come back and say, we want another try, when they're not entitled to it. I think that's the gist of it. Refresh me on the jury verdict form. Did they, was there a specific finding on causation? There was not, because it didn't get to that issue. No, was there a general verdict form? The verdict form itself stated, hold on one moment here. I have a quote. I believe it's 392. Let me grab my notes here and double check that, Your Honors. It's probably in here someplace. Thank you, Counsel. 6112 is actually the verdict. So on that it says, do you find that plaintiffs have proved by preponderance of evidence each of the elements necessary to establish their claim of negligence against Gerard Boone? And it states, no, checkmarked by the jury. Now, so that means it didn't even get to the question of whether damages or causation was there, because there was no negligence found by the jury. Now, that's a very important aspect, because it doesn't even get to the question of damages. So if Your Honors uphold that verdict, that finding of no negligence, then the damages issues are also moot, in our opinion, which is a very ‑‑ opposing counsel tries to say, well, you can't just say it's moot. Of course you can. If you find that that verdict is upheld, the damages issues fall away. Thank you, Counsel. Thank you. Your Honors, negligence per se instructions are found in the ER 3912. Just a second. 39, okay. 3912, I believe, is where it begins. There's also 3943 to 3946. And these are the instructions that were proposed with our argument beneath them. And I would just ‑‑ Your Honor, the record is the district court's denial of those instructions? Again, Your Honor, at the time of trial, there was no record of the denial. However, at the time ‑‑ So all you have is the motion. Motion for new trial, where he specifically finds the reasons why he did. No, really, there has to be. I mean, someplace, somehow, he has to have said, this is denied. This was a trial where the judge made a lot of decisions and basically came back and gave us his opinion about those decisions, but he didn't give reasons why. He didn't have ‑‑ No, but at some point, he's going to say, we're refusing your instruction. That's what's puzzling to me in all these piles of excerpts you have here. We don't have a ruling on your ‑‑ Do you want to know what reality happened? They probably had an off‑record meeting about jury instructions because they often do that in order to fetter out which ones are going to be the ones, and then they get on the record and they put on the record what those instructions were. Yes, but where's that? He didn't do that. He just went ahead and gave them and said, this is what he's doing. And did anybody object at the time? Again, the objections were made at the time that the discussion was. No, but there's some trial judges who say, all right, we're going to have an off‑the‑record discussion, and then they give the instructions and they say, do you have any additional instructions to give or do you object to any instructions? I did not see when that was given the opportunity to do that on the record, Your Honor. I didn't see that either. Yes. Counsel, opposing counsel cited the verdict form in which the jury indicated that there was no negligence. And we're not talking about negligence per se, but if you have a unanimous verdict of the jury that there was no negligence, even if there had been a pleading of negligence per se, wouldn't that have had the same impact? Negligence per se is a completely separate theory of negligence. I understand it's a different theory, but in terms of what the jury looks at, they're basically saying what they did here is not negligent. I find it difficult to understand how you've been grievously injured when they don't even give you plain, simple negligence, and you're asking for something that's a higher step up. First of all, negligence per se is a little easier because it actually deals with whether or not the four elements of negligence per se, I don't need to go through that with you, but the reality is it's easier, number one. Number two, the jury never got to the point of these are the regulations. They weren't admitted because they would be admitted in the instructions that we proposed. They never actually looked. Did you offer evidence of the regulations? Yes, Your Honor, we did. In the proposed jury instructions, I just cited those. No, no, no, I'm talking about before the jury. Did you cross-examine, when you cross-examined the truck drivers, did you ask them about the regulations? We did, but the jury was not entitled to answer the question of whether or not a violation of those provisions caused this crash. Now, in terms of, and I don't want to prolong this, but just in terms of your theory of negligence per se, they have to be, the plaintiffs have to be part of the protected class. I don't see any case that says that a violation of a log book puts plaintiffs in a protected class for negligence per se purposes. Your Honor, the specific purpose of the provisions of those regulatory codes is to make sure that we stop drowsy driving and safe driving. But the log book violation is, you know, that's a technical violation in the sense that you may not be part of the protected class. But do you have any case that says that on the log book violation? Well, no, Your Honor, but it's also partial. I just wanted to know if you had a case. I'm sorry. The second one is it doesn't talk about sleep. It talks about time off before driving, right? Yes, the history behind those regulations is based upon studies about the number of hours that people should be and the amount of time that they need to recoup in between those times. And the question about why those regulations are there was not part of the trial for sure. Okay. Were you able to ask the driver about that regulation? They were asked whether or not they were in violation of certain regulations about sleep and whether or not they were in violation, but the specific provisions were not brought to the jury's attention. And what was the answer? The answer was he violated them. He admitted that he violated them, yes. Both in deposition and later on. So then did the jury, were they, was he examined about, okay, there is a regulation that says this? Did you violate this? He said he wasn't tired. Did he ask, were you, was he asked, did the jury ever know what these regulations said, or at least the pertinent one? Not the specific language of the regulations, no. They knew that there was regulations out there. We intended to offer it through the jury instructions and argue it at the time of argument. And I take it the record doesn't actually include that examination or cross-examination? The record should have an examination of that. I don't have a cite to it as we speak. But we don't. It's hard to. I understand. There is several feet of actual record in this case. And all I can say, Your Honor. And I don't. But if there is a page where it actually shows that, I don't know what it is. All I can say, Your Honor, is there was probably what I believe to be 15 issues that I was going to be arguing in front of Your Honor today. And there was a lot of issues that we felt warranted that. And I didn't have the specific citation to that particular element of it. I apologize. Thank you, counsel. Thank you, Your Honor. The case has started to be submitted for decision.
judges: Thomas, M. Smith, Bucklo